IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JOSEPH P. PINKSTON, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-246-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Joseph P. Pinkson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and an award be made as described herein.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background and Procedural History**

Claimant was born on October 4, 1972 and was 37 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade. Claimant has worked in the past as an elevator mechanic and constructor. In a decision on March 4, 2003,

3

Defendant found Claimant was disabled beginning on November 1, 2002 due to bilateral calcaneal fractures making him non-weight bearing at that time. On April 8, 2009, Defendant determined that Claimant was no longer disabled as of April 1, 2009. Claimant appealed the decision, but the cessation of benefits was upheld by a disability hearing officer. Claimant requested a hearing.

On June 24, 2010, an administrative hearing was conducted before ALJ Gene M. Kelly in Tulsa, Oklahoma. On July 23, 2010, the ALJ issued an unfavorable decision, upholding the cessation of benefits. On May 18, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to place the burden upon Defendant during his termination analysis;

4

and (2) failing to properly evaluate and weigh the medical opinions of the consultative examiner and treating physician and failed to consider the added effects of Claimant's obesity in combination with other impairments. Claimant requests that benefits be reinstated, including the payment of back benefits.

**Termination Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairment of status post bilateral calcaneal fractures at the time of the prior disability decision. He further found that as of April 1, 2009, the medical severity of Claimant's impairment had decreased such that he is no longer non-weight bearing and does not require an assistive device to ambulate. (Tr. 18). The ALJ concluded Claimant could perform sedentary work except that he could not be exposed to unprotected heights, fast and dangerous machinery, or temperature extremes, exposure to dampness, dust, fumes, and gases, and no walking on uneven surfaces or more than occasional twisting of the torso. (Tr. 19). After consultation with and inquiry of a vocational expert, the ALJ determined Claimant could perform available jobs such as clerical mailer, assembler, and order clerk. (Tr. 22).

Claimant's injury original arose when he fell from a deer stand while hunting and fractured both heels in October of 2002.

He was completely non-weight bearing and walked only on crutches. He was determined by Defendant to meet a listing and was granted disability benefits. (Tr. 320-25). Claimant was primarily treated by Dr. Audie G. Swinney during the relevant period from 2004 through 2008. (Tr. 327-30, 332-37, 337-43, 342-55).

In January of 2009, Claimant received a Final Evaluation by Eastern Oklahoma Orthopedic Center. Claimant's impairment was considered to be moderately severe, stating he required two crutches to ambulate short distances in the home. He used a three point step to gait pattern with the crutches. He had decreased stance time and step length on the right lower extremity, decreased cadence, decreased right knee extension with decreased heel to toe gait bilaterally. For longer distances, Claimant used a wheelchair. Pain at rest was estimated at 5/10 and while walking 10/10. (Tr. 369).

On February 24, 2009, Claimant was evaluated by Dr. Ronald Schatzman. Dr. Schatzman found Claimant walked with a limp and his heels were tender. (Tr. 371). Claimant walked with an antalgic gait with a noticeable limp on the right foot. He did not require walking aids at the time. However, when he attempted to walk without the lace-up boots, his gait becomes severely weak and he had severe difficulty walking very short distances from the chair

to the examining table. He did not require assistive devices for ambulation. He also had no identifiable muscle atrophy. (Tr. 372). Dr. Schatzman concluded that Claimant was "severely impaired from activities of daily living; he would not be able to do any prolonged standing or walking. He could not walk on uneven ground. He could very short distances due to his painful ankles. He has (sic) already on disability and I agree that he is severely disabled." Id.

On March 4, 2009, Claimant's case was evaluated. Dr. Carmen Bird determined "[m]edical improvement has occured (sic). SED RFC at present." (Tr. 377). Claimant's benefits were terminated thereafter.

On September 10, 2009, Dr. Swinney authored a letter which stated he had been treating Claimant since July 26, 2004 due to his crushed feet. He stated that he had reviewed Dr. Schatzman's report and agreed Claimant had great difficulty walking and has to wear lace-up boots for stability. He believed Claimant remained totally disabled and is severely impaired from activities of daily living. He further stated that Claimant would not be able to do any prolonged standing or walking and could not carry on any meaningful work. (Tr. 431).

On November 18, 2009, Dr. Swinney prepared a Physical Residual

7

Functional Capacity Questionnaire. Dr. Swinney stated that Claimant continued to have severe pain bilaterally in his ankles with any walking or standing restricted to less than 5-10 minutes. He found Claimant to have decreased range of motion and stiffness in his joints. He estimated Claimant's impairments would last a lifetime. (Tr. 433). Dr. Swinney also opined that Claimant could walk less than a city block without rest or severe pain. He set forth that Claimant could sit for 15 minutes at a time, stand for 10 minutes at a time, and sit/stand for less than 2 hours in an 8 hour workday. (Tr. 434-35). Dr. Swinney stated Claimant needed to be able to move around every 10 minutes for about 5 minutes at a time, needed unscheduled breaks every 15-20 minutes, needed to keep his feet elevated at waist level while sitting for 6 hours in an 8 hour workday, could not lift and carry anything in a competitive work situation, and could never squat, crouch, or climb. Claimant had good days and bad days and would miss work more than four days per month. Dr. Swinney stated Claimant was totally disabled since his fall. (Tr. 435-40).

Dr. Swinney prepared another Physical Residual Functional Capacity Assessment form dated May 19, 2010. He found Claimant could not lift and carry occasionally or frequently. He stated Claimant could stand and/or walk less than 5 minutes at a time,

8

could sit less than one hour for approximately 15-20 minutes, and had to periodically alternate sitting and standing to relieve pain. Claimant had decreased range of motion and marked stiffness. Dr. Swinney set out that Claimant could never climb, balance, stoop, kneel, crouch, or crawl. His narrative stated Claimant had no stability in his ankles from the crush fractures. Claimant was to avoid exposure to extreme cold, humidity, wetness, and vibration, which would cause increased pain and stiffness. (Tr. 444-48).

Claimant first indicates that the ALJ improperly placed the burden upon him instead of Defendant. Clearly, in a termination of benefits case, the regulations and prevailing case authority places the burden on Defendant at all stages of the process to end benefits. 20 C.F.R. § 404.1594(f); Hayden v. Barnhart, 374 F.3d 986, 991 (10th Cir. 2004). The ALJ expressly stated in his decision at step eight of the termination of benefits analysis that "[a]lthough the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration." (Tr. 17). This misstates the burden in termination cases and mandates reversal.

### Evaluation of Medical Opinion Evidence

The ALJ sent Claimant to Dr. Schatzman for evaluation and,

therefore, could not have been a treating physician. The ALJ applied the controlling weight analysis for a treating physician, finding he could not give the opinion controlling weight "because he has no longitudinal history of treatment (sic) the claimant." (Tr. 21). Dr. Schatzman's opinion supported a restriction in Claimant's ability to ambulate as it applies to Listing 1.02 and weighs against a termination of benefits due to medical improvement. His opinion should have been evaluated under the correct criteria and it was not.

The ALJ also rejected the opinions of Dr. Swinney, refusing to give them controlling weight "or special significance" because the opinions conflict with Dr. Swinney's treatment records and are inconsistent with other substantial evidence in the record. The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

10

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers

11

the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

This Court has reviewed Dr. Swinney's extensive treatment records. Unlike the ALJ, the opinions Dr. Swinney set forth in his assessments are entirely consistent with his treatment of Claimant. As a result, the ALJ's rejection of Dr. Swinney's opinions without adequate justification represents error requiring reversal.

Claimant also contends the ALJ should have considered the effect of his obesity upon his ankle condition. An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments). "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id.; *see also*, Hargis v. Sullivan,

945 F.2d 1482, 1491 (10th Cir. 1991)(an ALJ "must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability.")

"Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the medical record. Id.

Dr. Schatzman diagnosed Claimant as obese. The ALJ should have evaluated the effects of Claimant's obesity upon his weightbearing impairment.

**Award of Pre-Termination Benefits**

This Court agrees with Claimant's interpretation of the Hayden decision. The Tenth Circuit determined that in a termination of benefits case, reinstatement of benefits is the appropriate remedy upon reversal, including an award of past benefits which would have been due but for the termination. Hayden, 374 F.3d at 994. Accordingly, this Court will recommend that benefits be restored and that Defendant be ordered to pay any benefits which would have been paid since the date of termination.

**Conclusion**

The decision of the Commissioner is not supported by

substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED**, that Defendant be ordered to restore Claimant's benefits, and that Claimant be awarded an amount equal to the benefits that would have been paid from the date of termination. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 24th day of July, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE